[Civ. No. 26263.    Second Dist., Div. One.    Dec. 21, 1962.]

FLOYD E. PERKINS et al., Plaintiffs and Respondents, v. GLENN P. KETCHUM, Defendant and Appellant.

James R. Tweedy and Benjamin M. Reinhardt for Defendant and Appellant.

David R. Denny for Plaintiffs and Respondents.

FOURT, J.—This is an appeal from a judgment awarding plaintiffs compensatory damages arising out of fraudulent representations by the defendant with reference to the purchase of a parcel of real property.

A résumé of some of the facts is as follows: the defendant and/or his wife had owned the property in question for about eight years. Defendant was a licensed real

estate salesman or broker from 1945 to the time of the sale in dispute in August 1958. Defendant represented that he knew the requirements of the laws with reference to the development of the property in question for residential income purposes.

The plaintiffs, at the time of signing the contract on August 22, 1958, had been in this state about two weeks. They previously had resided in Washington State where they were engaged in the painting business as a contractor or subcontractor. They had no experience in California with real property transactions or with any law with reference thereto, or with the purchase of property for improvement with dwelling units.

The property in question was located in the unincorporated area of Los Angeles County and was zoned as R-2. It was L-shaped, consisting of a rectangular portion with a street frontage of 63.1 feet and a depth of 303.03 feet and a portion without street frontage with a width of 126.2 feet and a depth of 164.04 feet. The total area was 39,822.41 square feet. Two single family dwelling houses and two duplexes and a small shack were located on the property. The structures were estimated to be about 60 years of age and contributed little, if anything, to the value of the property. The ground was littered with trash, debris, undergrowth and broken bottles which were 2 feet deep in some areas.

The plaintiffs were interested in purchasing the property, as the defendant well knew, for the purpose of improving it with the maximum number of rental dwelling units. To induce the plaintiffs to buy the property the defendant represented (1) that he had a plot plan of the property showing 15 dwelling units thereon which had been approved by the County Department of Building and Safety and that the property met all requirements of all laws and ordinances for the construction or location thereon of a total of 15 family dwelling units; (2) that he knew the requirements of the county and of the county ordinances with reference to the improvement of said property and that the property met all requirements for the construction or location thereon of a total of 15 family dwellings or dwelling houses; (3) that the plaintiffs, if they purchased the property and if they acquired the dwelling houses to be relocated thereon, could obtain a permit from the Department of Building and Safety to locate such dwelling houses on said property, it being required only that the dwelling houses, as structures, comply

with the requirements of the building code of the county, as the property met all requirements of all laws and ordinances for the location thereon of 15 dwellings at any one time; (4) that he knew the requirements for sewer mains and sewer installations of the county as said requirements pertained to said property; that there were two 4-inch sewer mains in said property, one of which connected the front house to the public sewer in front of said property and the other of which connected the other three houses to the public sewer, that the latter 4-inch sewer main was 11 feet deep at the front of the property and at all points was of sufficient depth to provide adequate fall for any of the dwellings then upon or which might be placed therein, and that to provide lawful sewage outlets for any added dwellings which might be placed upon said property, plaintiffs would need only to connect such added dwelling units thereto at the nearest point on the existing main; (5) that the dwelling houses thereon were served by two water mains, each of which was 1-1/2 inches in diameter, that such mains were adequate to serve 15 dwelling units on the property and that added units to be placed on the property could be adequately served by connecting the added units to the existing water mains at the closest points. Defendant also told plaintiffs that the property was zoned for R-2 and that such zoning permitted two dwelling units on the first 5,000 square feet and one additional unit for each 2,500 square feet, and that a 4-inch sewer main, such as was in the property, would accommodate 64 units (meaning houses).

There was testimony and evidence which, if believed by the court, indicated that the defendant never had any plans showing 15 units on the property which had either been approved by the County Department of Building and Safety or submitted to that department for approval. Under county ordinance 1494 no more than 12 dwelling units could be placed upon the property and under county ordinance 4478 a recorded subdivision map was required for more than four rental family dwelling units on the property and there was no such recorded subdivision map. Further, that the defendant did not know the requirements with reference to the sewer mains and installations. County ordinance 6130 required the installation of a main line sewer having an inside diameter of not less than 8 inches for the development of the property and required that the laterals have at least a 2 per cent fall and be at least 1 foot below the surface. The

existing mains were less than 1 foot below the surface and the requirements above indicated could not be met by the existing sewers.

The plaintiffs, after the defendant made some of the representations heretofore set forth and before the contract was signed, did call the Department of Building and Safety and inquired as to the meaning of R-2 zoning and as to whether a 4-inch sewer pipe would accommodate 64 units (meaning houses). The Department of Building and Safety without reference to the qualifying provisions of other ordinances which applied to the property in question had ascribed substantially the same meaning to R-2 zone as the defendant had given. The plaintiff also was told by the Department of Building and Safety that a 4-inch sewer pipe would accommodate 64 units (meaning plumbing drain outlets and not 64 dwelling units).

The plaintiffs produced the only witness who testified as an expert as to the value of the property.

Prior to the taking of any evidence the defendant requested the judge to make an order excluding the witnesses. The request was refused. Thereafter the judge, upon his own motion, excluded the witnesses from the courtroom.

Appellant now asserts in effect that the evidence was insufficient to support the essential findings of the court; further that the plaintiffs themselves made an inspection of the premises and talked to the Department of Building and Safety and therefore they cannot now assert that they relied upon defendant's representations. Further that it was prejudicial error to refuse to grant the motion for exclusion of witnesses; that the damages were excessive.

The defendant knew that his representation with reference to having a plot which had been approved by the Department of Building and Safety was false. The evidence was that he had previously thought about developing the property, he had contacted builders and contractors with reference to construction work upon the property, he had contacted a city planner and a consultant with reference to changing the zone to R-3; he said he knew the requirements set forth in the codes, he was a real estate broker and had owned the property for eight years, during which time he had been interested in its development; he had drawn a plan showing 15 units on the property and had consulted contractors with reference to the building of such units. He sold the property to plaintiffs shortly after the subdivision map requirement

became effective. The trial judge could well have believed under the circumstances that defendant had investigated the placing of 15 units upon the property and had found that such could not be done.

Mr. Perkins testified that he relied upon the defendant's representations. Assuming even that plaintiffs relied in part upon what was told them by the Department of Building and Safety and not entirely upon what the defendant said or represented to them, the defendant could nevertheless be held liable.　　 It was aptly stated in *Wennerholm* v. *Stanford University School of Medicine*, 20 Cal.2d 713, 717 [128 P.2d 522, 141 A.L.R. 1358]: "In actions for fraud it is not required that a defendant's representations be the sole cause of the damage. If they are a substantial factor in inducing the plaintiff to act, even though he also relies in part upon the advice of others, reliance is sufficiently shown."

And in *Sullivan* v. *Helbing*, 66 Cal.App. 478, 483 [226 P. 803] it is set forth: "It is true that the evidence shows that the plaintiffs did make some independent investigation and were informed by the tenant that he could pay his rent; but it further shows that they relied upon the statements of defendants concerning the same, and that they would not have gone through with the transaction had they known the true facts. The mere circumstance that one makes an independent investigation or consults with others does not necessarily show that he relied on his own judgment rather than upon the representations of the other party, nor does it give rise to a presumption of law to that effect. Here plaintiffs were deceived by the tenant, who subsequent to the completion of the transaction informed them he had paid no rent. Under these circumstances plaintiffs were misled through no fault of theirs, and as they also relied upon the representations of the defendants they are entitled to relief from the fraud practiced upon them (12 R. C. L., 'Fraud and Deceit,' sec. 111)."

　　 The plaintiffs, in their talk with the department representative, inquired about how many units could be placed on a property the size of the property in question, however there was no talk as to how many houses could be placed on the particular property in question or as to what would be required to place such units on such property.

Under the circumstances of this case the inspection made by the plaintiffs will not be cause for reversal of the judgment.　　 In *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412,

435 [159 P.2d 958] it is said, "A defrauded person, however, is not barred from maintaining an action merely because he commenced an investigation if it was incomplete or abandoned before discovery of the falsity, particularly if the defendant has a superior knowledge of the facts, or if it is difficult for the plaintiff to ascertain all the facts or he is not competent to judge the facts without expert assistance."

■ And in *Dow* v. *Swain*, 125 Cal. 674, 683 [58 P. 271] it is appropriately stated:

"I do not subscribe to the idea that under all circumstances an actual examination by the buyer will shield the wrongdoer from an action for damages.

"Every case must be judged for itself, and the circumstances which warrant or forbid relief cannot be scheduled. If the seller knows the facts, and the buyer is ignorant, and to the knowledge of the seller the buyer relies upon the representations, I see no reason why relief should not be granted, although an imperfect examination was made. It may have been imperfect because of the representations. Means were used to prevent the examination, and it would not be going far to say that the relation is made confidential by the mere making of the representation with the knowledge that it will be acted upon. (Civ. Code, sec. 2219.)" (See also: *Shearer* v. *Cooper*, 21 Cal.2d 695, 702 [134 P.2d 764]; 23 Cal.Jur.2d 93; Witkin, Summary of California Law, Vol. 2, p. 1389; *Seeger* v. *Odell*, 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291].)

■ With reference to the representations made by the defendant having to do with the sewer lines the evidence was sufficient to sustain the court's findings on the subject matter. When the defendant and plaintiffs were talking about 64 units on a 4-inch sewer line the plaintiffs were talking about houses or dwellings and the defendant quite well knew this. When the Department of Building and Safety talked to plaintiffs about what a 4-inch sewer line could accommodate they were talking about 64 units or plumbing outlets, such as a drain outlet, a bathtub, a toilet, a sink, a washbowl. In any event the sewer line was not located as represented by the defendant and defendant must have known of the falsity of his representations. The sewer mains were beneath the surface of the ground but not to the depth as represented. ■ See *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 748 [192 P.2d 935] where the court said:

"An independent investigation or an examination of property does not preclude reliance on representations where the falsity of the statement is not apparent from an inspection, or the person making the representations has a superior knowledge, or the party relying thereon is not competent to judge the facts without expert assistance." (See also *Milmoe* v. *Dixon*, 101 Cal.App.2d 257, 260 [225 P.2d 273].)

The same may be said of the defendant's representations to the plaintiffs about the water lines.

Appellant's next contention is that the court should have granted his motion made in the first instance to exclude all witnesses from the courtroom. The case was tried without a jury. After some 20 pages of transcript had been given the judge ordered the witness in question excluded. The deposition of the particular witness in question was taken and used extensively in the trial. The judge was not guilty of any error in proceeding as he did.

The damages allowed were not excessive. The defendant offered no direct evidence as to the value of the property. Plaintiffs agreed to purchase the property for $36,000, relying upon the representations of the defendant. The testimony of the expert who had been a full time real estate appraiser for 13 years, and for 15 out of the last 20 years had lived within a block of the property was to the effect that the land, without consideration of the buildings, was worth $22,100—deducting $1,600 as the cost to clear the site and remove the existing buildings—leaving $20,500 as the value of the property.

The purchase price of the property to the plaintiffs was $36,000, subject to a first deed of trust in the sum of $13,040.52. The plaintiffs in effect agreed to pay the $13,040.52 secured by the deed of trust and paid the balance of the purchase price by paying defendant $12,000 in cash and by giving to defendant their promissory note secured by a purchase money deed of trust on the property in the amount of $10,959.28.

The finding of the court with reference to how the total damages sustained was arrived at is proper. That finding reads:

## "XXIV

"Plaintiffs are damaged in the sum of Fifteen Thousand, Five Hundred Dollars ($15,500.00), which sum is the difference between the price which Plaintiffs paid for said parcel of real property and its actual value at the time when they

paid said price; the sum of Eight Hundred Dollars ($800.00), which sum is the difference between the price which they paid for said dwelling house to be moved onto said real property and the price for which they sold said dwelling house; and the sum of Seven Hundred Thirty-Eight Dollars and Thirty-Seven Cents ($738.37), which sum is the amount that Plaintiffs paid in attempting to obtain a duly recorded subdivision map of said real property. Plaintiffs have suffered compensatory damages in the total sum of Seventeen Thousand, Thirty-Eight Dollars and Thirty-Seven Cents ($17,038.37)."

The evidence in this case supports the findings and the findings sustain the judgment. The plaintiffs had a right to and did rely upon the false representations of the defendant, to their detriment.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.