[No. B009842. Second Dist., Div. One. Apr. 30, 1986.]

JOSEPHINE A. CORY et al., Plaintiffs and Appellants, v.
VILLA PROPERTIES et al., Defendants and Respondents.

594

COUNSEL

Scott B. Whitenack and Michael Heumann for Plaintiffs and Appellants.

Hagenbaugh & Murphy, Neil R. Gunny, Katharine L. Spaniac, Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, Edward L. Compton and Thomas N. Charchut for Defendants and Respondents.

## OPINION

## ARANDA, J.*—

### INTRODUCTION

Plaintiffs appeal the trial court's grant of summary judgment in favor of all defendants in a case arising out of fraud and misrepresentation in the sale of real property purported by respondents to be 2.84 acres when in fact the property consisted of only 1.88 acres. Appellant contends there are triable issues of fact. We agree in only one regard.

### FACTS

On March 7, 1980, appellants, Josephine A. Cory and Troy Cory (hereinafter appellants), purchased a residential estate located at 639 Rosemont Avenue, Pasadena (hereinafter realty) from defendant respondents, Stephen and Marilyn Odell and Charles and Judy Smithdeal (hereinafter sellers). The appellants had seen a listing in the Pasadena Board of Realtors and an ad placed by the sellers in Los Angeles Magazine which described the realty as being about 2.7 acres. On or about December 7, 1979, respondent Sue Villicana (hereinafter sellers' broker) had shown the property to appellants in her capacity as a broker for respondent Villa Properties. She visually pointed out the realty's boundaries and represented its acreage at "about three acres." The next day she delivered a brochure to the appellants describing the property as consisting of 2.7 acres.

On December 15, 1979, appellants again toured the realty with both Villicana and the sellers at which time a similar representation as to acreage was made by both the sellers and sellers' broker.

Appellants contend that they purchased the property for purposes of subdividing the lots and selling off part of the property for profit. For purposes of this subdivision, appellants secured the services of a surveyor. On March 23, 1981, appellants learned that the true acreage was only 1.88 acres. On April 6, 1981, appellants notified sellers' broker of "the missing acre." Although appellants subsequently obtained a tentative subdivision map with respect to the 1.88 acres, it was for only two lots instead of the greater number they had anticipated. On May 4, 1981, appellants filed a complaint against the seller and the sellers' broker for breach of contract, fraud, intentional and negligent misrepresentation, suppression of facts, false advertising and for reformation of the contract on theories of fraud and mistake.

---

*Assigned by the Chairperson of the Judicial Council.

The complaint was never served on Peggy Peckham dba The Real People, the buyers' broker. A demurrer by the Pasadena Board of Realtors was sustained on June 19, 1981, and then on July 24, 1981, sellers' demurrer (in which sellers' broker joined) was sustained with leave to amend. As of that same time appellants ceased paying the obligations under the all inclusive trust deed encumbering the property and sellers instituted foreclosure proceedings. To forestall the nonjudicial foreclosure, appellants filed for a preliminary injunction in the trial court. The motion was denied on August 14, 1981.

On September 4, 1981, appellants filed the first amended complaint which was substantially similar to the original complaint except as to respondent Alexander Villicana, M.D., and in that it deleted the Pasadena Board of Realtors.

On September 9, 1981, appellant Josephine Cory filed a voluntary petition for chapter 11 reorganization in the United States Bankruptcy Court for the Central District of California. Previously, she had her husband, appellant Troy Cory, a copurchaser of the realty, transfer his title to the subject property to her as her separate property so that she could file for relief in bankruptcy. In the bankruptcy petition, appellant, under oath, estimated the value of the realty at $1,230,000. The sellers challenged this estimate and the bankruptcy court resolved the dispute in its finding of fact filed February 10, 1982, setting the value at $850,000 exclusive of any value of the adjoining vacant lot which was to have been subdivided and sold. Appellant obtained a loan and paid off the sellers' note and her other arrearages on the estate. Respondent Villicana's motion to remand this suit back to the state trial court was granted by the bankruptcy court on August 19, 1983. Respondents thereafter filed their motions for summary judgment on June 20 and June 25, 1984.

The motions for summary judgment were on two related grounds: (1) that there was no fiduciary relationship between appellants and sellers' broker and (2) that the appellants, by virtue of appellant Josephine Cory's own representations to the bankruptcy court, suffered no measurable damages within the scope of the exclusive remedy, Civil Code section 3343.

The summary judgment motions were granted in favor of all defendants on October 16, 1984. The trial court ruled as follows: "The court has reviewed and considered the motion of defendant [sic] for summary judgment, papers filed in opposition by Plaintiffs, and all other supporting papers and finds that Plaintiffs' case falls within the purview of Walter versus Marler 83 CA 3rd 1, et. seq. The Court notes Plaintiff's Josie Cory declaration in bankruptcy proceeding, #LA 81 11322, and more specifically

in Schedule A2 thereof, has elected under penalty of perjury to place a value on the subject real property of $1,230,000.00 and further notes that the value in the petition for bankruptcy is dated 9-9-81. [¶] The Court further finds no representations are made to Plaintiffs as to the quantum of the property, either in escrow and the related contracting documents."

A judgment was entered on October 23, 1984. This appeal ensued.

### ISSUES

This court considered the following issues: (1) Was there an actionable misrepresentation of fact? (2) If there is an actionable misrepresentation of fact, did the trial court make a proper determination that Civil Code section 3343 provides the exclusive measure of damages? (3) Was the trial court correct in ascertaining that there was no "out-of-pocket" loss? (4) Even if there is no "out-of-pocket" loss, can there still be any triable issues?

### HOLDING

We conclude: (1) that misrepresentations as to the amount of acreage did take place and that said misrepresentations are actionable against both sellers and sellers' broker; (2) that the trial court correctly determined that Civil Code section 3343 is the exclusive measure of damages; (3) that the trial court properly concluded that there was no "out-of-pocket" loss; and (4) that appellant may have incurred "additional damages" for subdivision expenses and possible losses pursuant to Civil Code section 3343, subdivisions (a)(2), (a)(4).

### I

### MISREPRESENTATION

A single misrepresentation by the vendor of a material fact in a transaction is sufficient to support a judgment for fraud. (*Macco Construction Co.* v. *Fickert* (1946) 76 Cal.App.2d 295 [172 P.2d 951].) In the instant case, it is clear on its face that the sellers misrepresented the size of the property. The advertisement in *Los Angeles Magazine,* the listing and the representations made by both the sellers and the sellers' brokers to the purchasers were that the property was about 2.84 acres. The reality was that the property was only 1.88 acres.

When the seller of land possesses or assumes to possess superior knowledge of the property and asserts such knowledge to the vendee, who has not had an equal opportunity to gain knowledge, the seller's asserted

opinion as to value of land may be equivalent to an affirmation of fact and hence actionable fraud. (*People* v. *Gordon* (1945) 71 Cal.App.2d 606 [163 P.2d 110].) ▉ In the instant case, the sellers asserted their knowledge that there were 2.84 acres of land. This assertion was accepted by the appellant purchasers until the following year when a survey for purposes of subdivision of the property discovered that nearly an acre was missing and that the property was really only 1.88 acres. Therefore, the sellers' misrepresentations are actionable.

In regard to sellers' broker, we note that in the instant case, appellant plaintiff purchasers purchased the property on March 7, 1980, for the sum of $705,500 in the belief that said property contained 2.84 acres rather than the actual 1.88 acres. According to appellant's first amended complaint, appellant notified the sellers' broker of "the missing acre" on April 6, 1981. Appellant further alleges that "reliance on defendants' representations were justified because of the falsity of the statements were not apparent from an inspection of Rosemont Properties and Sellers' Broker was a licensed real estate broker who had obvious superior knowledge of the sale of land and properties, and in particular Rosemont Properties." In view of the misrepresentations made by sellers' broker to the purchasers to induce them to buy the realty, we conclude that appellants have clearly spelled out a cause of action for misrepresentation against the seller and also the sellers' broker, all of whom are respondents in this appeal.

## II

### Is Civil Code Section 3343 the Exclusive Measure of Damages?

▉ But, what is the measure of damages? Respondents allege that the exclusive measure of damages for the instant action is Civil Code section 3343. We agree.

A bit of background would be useful.

Until 1935, California Civil Code section 3333 provided the general rule regarding the measure of damages for recovery in tort, that being that the amount to be compensated would be for all the detriment proximately caused which principle was called the "benefit of the bargain rule." (See *Wood* v. *Niemeyer* (1921) 185 Cal. 526 [197 P. 795]; *Hines* v. *Brode* (1914) 168 Cal. 507 [143 P. 729]; *Rogaff* v. *Bartles* (1931) 115 Cal.App. 429 [1 P.2d 517].) Recognizing that the "benefit of the bargain" rule was an extreme rule, the Supreme Court stated that "[I]t should . . . be applied only in clear cases and upon just terms." (*Hines* v. *Brode, supra,* at p. 511.)

The Legislature responded in 1935 by the passage of Civil Code section 3343 and the Supreme Court in *Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744 [192 Cal.Rptr. 935] concluded that this statute provided the exclusive measure of damages thereby eliminating entirely the possibility of recovery based upon the "benefits of the bargain" measure. (See Adrian, *Recovery for Fraud in a California Property Transaction* (1978) 30 Hastings L.J. 475.)[1]

In *Bagdasarian* v. *Gragnon, supra,* at pages 762-763, the Supreme Court recognized that "[t]he right to recover *additional* damages does not refer to the *measure* of damages, but, rather, to such matters as expenses or consequential injury resulting from the fraud." (Italics in original.) Hence, this interpretation is in accord with the general rule that a defrauded plaintiff may recover for all the detriment proximately caused, which must necessarily include necessary expenses and indirect injuries caused by the fraud.[2]

As authority for this position, the Supreme Court cited *Jacobs* v. *Levin* (1943) 58 Cal.App.2d Supp. 913 [137 P.2d 500], wherein the illustration of the application of additional damages was plainly made by the court stating: "That latter provision was evidently intended to cover a situation where for example a buyer was obliged to move from the property that he had been fraudulently induced to purchase on account of the dangerous character of the premises. In such a case he could not only recover the difference between the amount that he had paid for the property and its actual value but also recover the expense of moving." (*Id.,* at p. 917.)

The Supreme Court then went on to elaborate on the recovery of expenditures by explaining that "[e]xpenditures which were reasonable under the circumstances, . . . may ordinarily be recovered, insofar as they have been lost or rendered fruitless because of the deceit." (*Garrett* v. *Perry* (1959) 53 Cal.2d 178, 186 [346 P.2d 758].)

The development of a separate rule for fraud by a fiduciary had a somewhat uncertain beginning in the case of *Gagne* v. *Bertran* (1954) 43 Cal.2d 481 [275 P.2d 15]. In *Gagne*, the plaintiffs, contemplating the purchase of two lots, hired defendant to test the soil to determine the amount of fill on the property. Defendant negligently misrepresented the amount of fill on the lots, as a result of which plaintiffs bought the lots and incurred a higher than expected cost of constructing a building on the premises. The trial court measured the amount of damages by the difference between the actual

---

[1]Many of the conclusions of the author of this note are the conclusions of this court.

[2]See generally McCormick, Law of Damages (1935) section 469; Prosser, Law of Torts (4th ed. 1971) section 110; Restatement of Torts (1965) section 549, subdivision (b).

cost of construction and what it would have cost if defendant's misrepresentations had been correct. The Supreme Court rejected this, stating at pages 490-491, ". . . the damages, whether for deceit or negligence, must be measured by the actual losses suffered because of the misrepresentation."

The court added, "'In reliance on defendant's information plaintiffs purchased the property. If the property was worth less than they paid for it, defendant is liable for the difference. On the other hand, if the lots were worth what plaintiff paid for them, plaintiffs were not damaged by their purchase, for even though they would not have bought the lots had they known the truth, they nevertheless received property as valuable as that with which they parted.'" (*Overgaard* v. *Johnson* (1977) 68 Cal.App.3d 821, 827 [137 Cal.Rptr. 412].)

Although in *Gagne* the majority cites Civil Code section 3333 as the basis for its ruling, the court actually enforced section 3343 as pointed out by the dissent. For the rule that *Gagne* notwithstanding, section 3343 applies in cases of fraud, see *Garrett* v. *Perry, supra,* 53 Cal.2d 178 [346 P.2d 758]; *Sixta* v. *Ochsner* (1960) 187 Cal.App.2d 485 [9 Cal.Rptr. 617]; *Lawson* v. *Town & Country Shops, Inc.* (1959) 159 Cal.App.2d 196 [323 P.2d 843]; *Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744; Philpott, *Imposing Liability on Data Processing Services—Should California Choose Fraud or Warranty?* (1972) 13 Santa Clara Law. 140, 153.)

Hence, the California statutory law follows the "out of pocket rule." As indicated in 13 Santa Clara Law., *supra,* page 153, "Civil Code § 3343, which states the rule of damage recovery for actions in fraud, awards the difference between what the defrauded party has expended and what he has received in value, *plus* additional damages arising from the transaction." (Italics in original, fn. omitted.) We agree.

### III

### WAS THERE ANY "OUT-OF-POCKET" LOSS?

How, then are the damages to be measured in the instant case? Since the property was purchased for $705,000 on March 7, 1980, we must look to the actual value of the property on that date. There is no appraisal of valuation as of that date other than the purchase price. But, since appellants allege that had they known the actual size of the property, they would not have paid that price for it, we must look for the actual value. The trial court correctly considered a number of appraisals made a little more than a year after the sale, the affidavit of the appellant Josephine Cory in the bankruptcy action that the realty had a value of $1,230,000 as well

as the finding of fact of the bankruptcy judge that the lot with the house had a value on February 10, 1982, of $850,000 exclusive of the additional unimproved lot.

In a summary judgment context, the standard of review is that affidavits and declarations of the moving party are strictly construed and those of his opponents, even if in conclusionary terms, are liberally construed. (*R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373, 376 [57 Cal.Rptr. 841, 425 P.2d 785].) Even so, the adverse party must submit competent evidence in opposition showing sufficient facts to substantiate his allegations. (*McHugh* v. *Howard* (1958) 165 Cal.App.2d 169, 174 [331 P.2d 674].)

There being no competent evidence offered in opposition by the appellants to counter the appraisals presented by the sellers and sellers' broker, the issue on this appeal becomes simply whether the evidence that was offered by the defendants would be sufficient to sustain a judgment in their favor. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 468 [33 Cal.Rptr. 661].)

The fact that the estimates considered by the court were a year after the sale does not invalidate them as evidence, but rather a change of value between the time of appraisal ordinarily goes merely to the weight of the evidence. (*Los Angeles County Flood etc. Dist.* v. *McNulty* (1963) 59 Cal.2d 333, 337 [29 Cal.Rptr. 13, 379 P.2d 493].)

Hence, we conclude that the trial court was correct in determining that the value of the realty at the time of purchase was equal to or greater than the price paid by the appellants. Consequently, there was no "out-of-pocket" loss.

IV

EVEN IF THERE IS NO "OUT-OF-POCKET" LOSS CAN THERE STILL BE TRIABLE ISSUES?

As the Supreme Court noted, "The statute awards damages for traditional 'out-of-pocket' loss '*together with* any additional damage arising from the particular transaction, . . .' If a plaintiff shows no traditional 'out-of-pocket' loss, that component of the award is zero. If, however, he goes on to show consequential or 'additional' damage of the type prescribed by the statute, the amount which he so demonstrates is recoverable. The only effect of his failure to show traditional 'out-of-pocket' loss is the necessity that a nullity be added to the amount shown to have been sustained as

consequential damages." (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 729-730 [150 Cal.Rptr. 637, 586 P.2d 1228]; italics in original.)

As we have indicated herein, Civil Code section 3343 provides the exclusive measure of damages. The section reads as follows:

"3343. (a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:

"(1) Amounts actually and reasonably expended in reliance upon the fraud.

"(2) An amount which would compensate the defrauded party for loss of use and enjoyment of the property to the extent that any such loss was proximately caused by the fraud.

"(3) Where the defrauded party has been induced by the reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which mightly reasonably have been earned by use of the property had he retained it.

"(4) Where the defrauded party has been induced by reason of the fraud to purchase or otherwise acquire the property in question, an amount which will compensate him for any loss of profits or other gains which were reasonably anticipated and would have been earned by him from the use or sale of the property had it possessed the characteristics fraudulently attributed to it by the party committing the fraud, provided that lost profits from the use or sale of the property shall be recoverable only if and only to the extent that all of the following apply:

"(i) The defrauded party acquired the property for the purpose of using or reselling it for a profit.

"(ii) The defrauded party reasonably relied on the fraud in entering into the transaction and in anticipating profits from the subsequent use or sale of the property.

"(iii) Any loss of profits for which damages are sought under this paragraph have been proximately caused by the fraud and the defrauded party's reliance on it.

"(b) Nothing in this section shall do either of the following:

"(1) Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof.

"(2) Deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

It has been held that in an action by a plaintiff for fraud in the sale of real property, that the plaintiff may specifically recover the sum expended in attempting to obtain a duly recorded subdivision map. (*Perkins* v. *Ketchum* (1962) 211 Cal.App.2d 245, 253 [27 Cal.Rptr. 278].) Also, pursuant to Civil Code section 3343, amounts paid for escrow fees, moving to and from the property, building permits, telephone connections, fences, yard cleaning, garage materials, door locks, shrubbery, taxes, rent and labor are examples of recoverable damages when reasonably expended in reliance on the fraud. (*Hardy* v. *Carmichael* (1962) 207 Cal.App.2d 218, 228 [24 Cal.Rptr. 475].)

Likewise, appellants may be entitled to damages for the loss of profits or other gains reasonably anticipated from subdividing and selling off the acreage which appellants thought they had purchased, but which was in reality a myth. Civil Code section 3343, subdivision (a)(4), provides the statutory basis for damages for loss of profits. (*Stout* v. *Turney, supra,* 22 Cal.3d 718, 728.)

## CONCLUSION

We find that Code of Civil Procedure section 437c, subdivision (f), is applicable in this matter. It states: "When the moving party moves for summary adjudication of issues, either by itself or as an alternative to summary judgment, if it appears that the proof supports the granting of such motion as to some but not all the issues involved in the action, or that one or more of the issues raised by a claim is admitted, or that one or more of the issues raised by a defense is conceded, the court shall, by order, specify that such issues are without substantial controversy. Moreover, upon that motion, the court shall, by written or oral order, specify those issues raised by the motion as to which there exists a material, triable controversy, and refer to the evidence which establishes a triable issue of fact regarding each of those issues. At the trial of the action the issue so specified shall be deemed established and the action shall proceed as to the issues remaining." Therefore, we hold that there is no substantial controversy as to the issues that there is in fact an actionable misrepresentation of fact by the sellers

and sellers' broker, that the trial court correctly ruled that Civil Code section 3343 is the exclusive measure of damages, and that there is no "out-of-pocket" loss suffered by the appellants.

Further, there exists a material, triable controversy, as to the issue of "additional damages," if any. This is an issue for the trial court to determine. In respect to the amount of "additional damages," the judgment is reversed. In all other respects, the summary judgment is affirmed.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.

A petition for a rehearing was denied May 30, 1986, and the judgment was modified to read as printed above. The petition of respondents Odells and Smithdeals for review by the Supreme Court was denied August 14, 1986.