[No. D009857. Fourth Dist., Div. One. Oct. 22, 1990.]

CHARLES P. MARVIN, as Trustee, etc., Plaintiff and Appellant, v. VICTORIA A. ADAMS et al., Defendants and Respondents.

[Opinion certified for partial publication.[1]]

___

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of sections II, III, IV and V.

COUNSEL

Procopio, Cory, Hargreaves & Savitch, David A. Niddrie and Gerald P. Kennedy for Plaintiff and Appellant.

Hillyer & Irwin, Norman R. Allenby and Dorothy J. Almour for Defendants and Respondents.

OPINION

HUFFMAN, J.—An action for breach of contract and fraud arising from an agreement to exchange real property was brought by Charles P. Marvin, M. D. (Marvin), trustee for the Charles P. Marvin, M. D., and Lucia B. Marvin Trust, against Victoria and Keith Adams (Victoria and Keith, or collectively Adams). At the conclusion of Marvin's case, the trial court granted Adams's motion for nonsuit. Marvin timely appealed.

We conclude the trial court properly granted the nonsuit. Accordingly, we affirm the judgment, grant Adams's request for attorney's fees under the contract, and remand the case to the trial court to determine the amount of such fees.

### BACKGROUND

#### 1. Marvin's Evidence

In 1979 Adams decided to sell Victoria's orchard and timber ranch in Hood River County, Oregon (the property). Adams hired David Lau to appraise the property and authorized Lau to hire Will Ellington to estimate the quantity of marketable timber on the property.

In June 1980 Lau sent Adams an appraisal report which recited that the property contained: (1) a total acreage of 290.5 acres (rounded), based on the county assessor's figure of 290.58 acres; (2) 61 acres of orchards, and (3) a total of 1,141,200 board feet of timber. (A board foot is 1 inch thick, 12 inches wide, and 12 inches long.)

In late 1980 Keith prepared a brochure describing the property as being 290 acres, with 62 acres "more or less" of orchard, and "over 1,000,000 board feet of marketable timber."

Marvin, a surgeon in Bakersfield, saw the brochure and in June 1981 telephoned Keith about the property. Keith sent Marvin a supplemental information sheet stating that a timber cruise[2] report on the property had showed "safely harvestable timber" in the amount of 1,141,200 board feet.

Keith told Marvin he had never had the property surveyed, and that Marvin could have a survey done at his own expense. Marvin did not do so.

On January 25, 1982, Marvin, as trustee for the Charles P. Marvin and Lucia B. Marvin Trust, and Victoria executed an exchange agreement (the agreement) in which the parties agreed to exchange Marvin's business office in Bakersfield together with a promissory note in the amount of $165,148.51 for the property.

Paragraph 16 of the agreement recited: "This document is the entire, final and complete agreement of the parties pertaining to the sale and purchase of the property, and supersedes and replaces all prior or existing written and oral agreements between the parties or their representatives relating to the properties."

Paragraph 20 of the agreement recited, in relevant part: "Each party accepts . . . all . . . aspects of the property in their present condition, . . . 'as is,' including latent defects, without any representations or warranties, express or implied, unless they are expressly set forth in this agreement."

Otherwise, the agreement described the property in metes and bounds and did not include either the acreage, the size of the orchard, or the timber area.

After the purchase, Marvin's daughter and son-in-law managed the property. In 1984 or 1985 the son-in-law (Jacobson) told Marvin the orchard was not producing as much fruit as it should. Marvin asked Jacobson to get a survey of the orchard and a timber cruise. Jacobson's surveyer found the total acreage of the property was 262.78 acres, including 51.82 acres of orchard. Jacobson's timber cruiser found that there had been approximately 780,000 board feet of timber on the property in the spring of 1982.

## 2. The Nonsuit

In granting the motion for nonsuit, the trial court ruled there was insufficient evidence to present a jury question as to fraud or negligent

---

[2] A timber "cruiser" is a person who is trained in examining stands of timber and estimating the number of board feet of timber that could be harvested from the area.

misrepresentation (Adams's attorney had agreed at the outset of trial that Marvin's fraud count also stated a cause of action for negligent misrepresentation), and that there was insufficient evidence to support a finding the contract was not an integrated agreement.

Marvin's motion for a new trial was denied. Judgment was entered in favor of Adams. This appeal followed.

## DISCUSSION

Marvin contends, in a somewhat different order: the trial court erred (1) in granting nonsuit on the fraud count, (2) in applying the parol evidence rule, (3) in granting nonsuit on the contract count on the basis of Oregon's doctrine of merger by deed, and (4) the trial court abused its discretion in denying Marvin's pretrial motion to amend the complaint to allege a cause of action for reformation.

## I

### *The Nonsuit on the Fraud Count*

■ "A trial court must not grant a motion for nonsuit if the evidence presented by the plaintiff would support a jury verdict in the plaintiff's favor." (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].) The trial court may not weigh the evidence or consider the credibility of witnesses, and must accept the evidence most favorable to the plaintiff, disregard conflicting evidence, and indulge every legitimate inference which may be drawn from the evidence in the plaintiff's favor. (*Id.* at pp. 838-839.) ■ "In an appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff." (*Id.* at p. 839.) "Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit." (*Ibid.*)

■ In support of the motion for nonsuit on the fraud count, Adams argued, among other things, there was no evidence of knowledge, at the time the representations to Marvin were made as to the acreage and the timber footage, the representations were false. Marvin concedes such knowledge is required to establish liability for fraud. (*Wilhelm* v. *Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331 [231 Cal.Rptr. 355].) Marvin argues, nonetheless, when the representations are by a landowner in regard to the area of his or her land, knowledge of the falsity is presumed and need not be proved.

The evidence introduced during Marvin's case demonstrated the source of the acreage amounts in the brochure were the Hood County assessor's records and the estimates provided by Adams's retained appraiser and timber cruiser. Adams never obtained a survey of the precise acreage of the property. In short, no evidence was introduced Adams had any reason to disbelieve the experts retained. Marvin, rather, relies on a presumption to the effect the landowner's knowledge of the falsity of misstatements of land boundaries is presumed and that the plaintiff-buyer need only prove there was a misrepresentation of fact. (*Salomons* v. *Lumsden* (1949) 95 Cal.App.2d Supp. 924, 929 [213 P.2d 132].) On that basis Marvin contends the court could not grant a nonsuit in the face of the presumption.

At the time of the *Salomons* case, presumptions had the effect of evidence which had to be weighed against conflicting evidence. (*Smellie* v. *Southern Pacific Co.* (1931) 212 Cal. 540 [299 P. 529]; *Scott* v. *Burke* (1952) 39 Cal.2d 388 [247 P.2d 313].) In 1967, however, the California Evidence Code was adopted. Section 600 of the Evidence Code provides in part: "(a) A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. *A presumption is not evidence.*" (Italics added; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 411, pp. 413-414.) The comment to the initial enactment of the Evidence Code relating to section 600 made by the Assembly Committee on Judiciary provides in part with regard to the second sentence of subdivision (a): "Nonetheless, the second sentence has been added here to repudiate specifically the rule of *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 299 Pac. 529 (1931). That case held that a presumption is evidence that must be weighed against conflicting evidence . . . .

". . . . . . . . . . . . . . . . . .

"To avoid the confusion engendered by the doctrine that a presumption is evidence, this code describes 'evidence' as the matters presented in the judicial proceedings and uses presumptions solely as devices to aid in determining the facts from the evidence presented."

In effect, the case law upon which Marvin relies as to the evidentiary value of presumptions was negated by the California Evidence Code. Moreover, while the presumption is a landowner is aware of his or her land boundaries "in the absence of other facts," Marvin's case did present such other facts. Marvin's case-in-chief showed the circumstances under which the land dimensions were obtained and under the circumstances of this case defeat any presumption the land owner was knowledgeable of the precise dimensions of the property.

The only post-1967 case which Marvin cites on the knowledge issue is *Cory* v. *Villa Properties* (1986) 180 Cal.App.3d 592 [225 Cal.Rptr. 628]. *Cory*, like this case, involved misrepresentations by property owners as to the acreage of their property. However, unlike this case, *Cory* was an appeal from a summary judgment, in which the trial court found the defendant property owners had made no representations as to the area of the property. The reviewing court held the defendants there had made such representations, and the representations would support a judgment for fraud. As the court was reviewing a grant of summary judgment, it was not necessary in *Cory* to address either the defendants' knowledge of the falsity of the representations or any presumption as to such knowledge. Accordingly, *Cory* does not support Marvin's contention he was not required to show Victoria, the property owner here, knew the representations in question were false in order to avoid the granting of a motion for nonsuit.

Alternatively, Marvin contends there was sufficient evidence of Adams's knowledge of the acreage and timber footage to support a jury verdict on that issue. Such evidence, according to Marvin, is, first, in February 1980 Keith told Lau, his appraiser, that the property had 60 acres of orchard *including* some pasture within the deer fence, and in July 1981 Keith told Marvin the property had 61 acres of orchard *plus* 18 acres of pasture and 1.5 acres of farmstead within the deer fence.

However, it is immaterial whether the property had 60 or 80 acres within the deer fence; what is material is the acreage of the orchard. On that issue, Keith's representation to Lau in February 1980 the orchard was "[a]bout 60 acres" is virtually identical to his representation to Marvin in July 1981 that the orchard was 61 acres, and there is no evidence Keith or Victoria knew either representation was inaccurate.

Next, Marvin argues Keith told him in June 1981 that Ellington's cruise had shown the property contained 1,141,200 net board feet of timber, and did not tell him Ellington later said that the total amount of net board feet was only 681,840. However, the later figure referred only to the board feet of timber in the easterly 80 acres of the property which was "ready for harvest," and not to the total amount of timber on the property. Again, Marvin failed to present the trial court with evidence from which an inference of knowledge could be drawn.

Finally, Marvin argues the foregoing evidence was sufficient for the jury to find in his favor on a theory of negligent representation; i.e., to find Adams had no reasonable grounds for believing Lau's appraisal was accurate.

However, we reject this argument for the same reasons we rejected Marvin's "knowledge" argument. We reach this conclusion because there was no discrepancy between what Keith knew about the orchard acreage and the timber footage and the representations he made to Marvin based on Lau's appraisal. Accordingly, there was no evidence Adams had any reason to believe that Lau's appraisal was inaccurate.

Simply put, Marvin was unable at trial to produce any evidence of scienter on the part of Adams as to the inaccuracy of Lau's report or any evidence which would put a reasonable person on inquiry regarding its accuracy. At best Marvin was only able to speculate Adams had to know or should have known. Even under the rigid standards by which we review the granting of a nonsuit, more evidence was required to allow this claim to go to a jury.

II-V*

. . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed and Adams's request for attorney's fees on appeal is granted. The case is remanded to the trial court to determine the proper amount.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied November 8, 1990.

---

*See footnote 1, *ante*, page 956.