Filed 4/10/14  Sierra Industries West v. Hosseinioum CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| SIERRA INDUSTRIES WEST, L.P. etc., et al.,<br><br>　　　　Plaintiffs and Appellants,<br><br>v.<br><br>ABOL HOSSEINIOUM et al.,<br><br>　　　　Defendants and Respondents. | A135894<br><br>(San Francisco City & County Super. Ct. No. CGC04434239) |

**I.**

**INTRODUCTION**

This lawsuit arises out of a 1999 commercial real estate transaction in which appellant Sierra Industries West, L.P., a California limited partnership (buyer) purchased a commercial building in San Francisco, California (the City) from respondents Abol Hosseinioum and Farrokh Hosseinyoun (sellers).  At the time of the purchase, the building had a large billboard on its roof (the billboard) which generated significant income through a long-term lease to a third party for advertising rights.  In 2003, several years after the purchase, buyer purportedly first learned the billboard's legal status was being questioned by the City; and after all the administrative remedies were exhausted, buyer was eventually ordered by the City to remove the billboard.

In this action, buyer sought to recover damages from sellers for fraudulent concealment, negligence, negligent misrepresentation, as well as restitution for a violation of California's Unfair Competition Law, Business and Professions Code section

1

17200 (the UCL).[1]  Essentially, buyer claimed that prior to its purchase of the property, sellers had misrepresented or failed to disclose material facts regarding the legal status of the billboard, specifically, whether the billboard had the proper permits from the City. The case proceeded to a jury trial on two of buyer's causes of action—fraudulent concealment and negligence.  On November 3, 2011, the jury returned its verdict for sellers.  The jury's determination is not challenged in this appeal.

This appeal concerns the remaining two causes of action that were decided by the trial court—buyer's negligent misrepresentation cause of action, and the cause of action alleging unfair acts and practices violating the UCL.  Before trial, sellers were granted summary adjudication on the negligent misrepresentation cause of action based on the court's determination that the undisputed evidence showed sellers had not made a "positive assertion" of fact regarding the billboard in connection with the sale of the property.  After trial, the cause of action for unfair business practices was tried exclusively to the court, resulting in a finding that section 17200's requirements were not met.  On appeal, buyer claims "[b]oth rulings were in error."  We disagree and affirm.

## II.

## FACTS AND PROCEDURAL HISTORY

In April 1999, sellers entered into the Purchase Sale Agreement (PSA) with buyers' predecessor, LLM Investments, Inc. (LLM), whereby sellers agreed to sell a commercial building located at 290 Division Street in the City (the building) for $5.6 million.[2]  The building had a prominent billboard on its roof oriented to face the adjacent elevated freeway.  In an "Offering Memorandum" prepared by sellers' real estate agent, it was represented that "There is significant signage income (10% of the gross income) on a long term lease with annual increases."  The value of the billboard was purported to be "[$]757,000 (@ 9.1% CAP Rate)."  (Italics omitted.)

---

[1]  All undesignated statutory references are to the Business and Professions Code.

[2]  LLM, which is also a named plaintiff in this case, assigned its rights under the PSA to buyer prior to the July 1999 close of escrow.

2

Sellers presented buyer with copies of the 1997 and 1998 leases for the billboard that had been entered into with Richard Traverso doing business as ADCO Outdoor Advertising (the sign tenant). The 1997 lease contained information relating to the history of the billboard, including a reference that there were some questions about the legal status of the billboard. The 1997 lease indicated that before the terms of a new lease were negotiated, the sign tenant "will attempt to determine if the face on the rooftop structure will be allowed to remain due to the uncertainty of its grandfathered status." The sign tenant was referring to the City's passage of a land use ordinance regulating outdoor advertising with the provision that, under certain circumstances, existing billboards would be "grandfathered" and exempted from the law.

The 1998 lease replaced the 1997 lease. The 1998 lease was for a 10-year term with a 10-year renewal option. Furthermore, it increased the rent payable by the sign tenant under the prior agreement from $1,200 to $5,000 a month. Buyer has maintained throughout this litigation that sellers' production of a new long-term lease at a higher rent led it to reasonably believe that the sign tenant had successfully established the billboard's legality.

In 2003, more than four years after the sale was completed, the City sent notices to all property owners with outdoor billboards requesting information about the legality of their signs. The purpose was to conduct a sign inventory, and then assign to all nonconforming but allowed signs (such as those grandfathered) an "in lieu" number for display on such signs. Buyers claimed this was the first time they became aware that there were current issues regarding the legality of the billboard.

On August 27, 2004, buyer filed suit against sellers.[3] After the lawsuit was filed, all parties agreed to stay the action to allow buyer to complete administrative proceedings with the City seeking to establish the legal right to continue using the billboard. The stay was lifted and this case was allowed to proceed after buyer exhausted its administrative

---

[3] Sellers cross-complained against the sign tenant for indemnity as the sign tenant had the lease for the billboard and was responsible for all repair, maintenance, and permitting issues.

remedies with the City, its position was rejected, and the billboard was ordered removed from the property's rooftop.

In its second amended complaint (SAC), which is the operative complaint for our purposes, buyer asserted causes of action against sellers for fraudulent concealment, negligent misrepresentation, negligence, and violation of the UCL. Buyer's position was that sellers allegedly "knew, recklessly disregarded or should have known . . . that the Rooftop Sign . . . was not duly authorized, constructed, permitted and/or maintained under the laws, regulations and requirements of the City of San Francisco." Moreover, buyer claimed that sellers' misrepresentations and omissions caused it to reasonably and justifiably conclude the billboard was authorized by the City at the time of the sale in 1999, until buyer discovered otherwise after it received a notice from the City in 2003, leading to the eventual removal of the billboard.

In the SAC, buyer points to Section 6.2 of the PSA, entitled "Representations and Warranties of Seller," stating that "There are no condemnation, environmental, zoning or other land use regulation proceedings, either instituted or planned to be instituted, *nor does Seller have knowledge of any facts which could detrimentally affect the use or operation of the Property . . . .*" (Italics added.) Furthermore Section 6.4 of the PSA states: "No representation, warranty or statement of Seller in this Agreement or in any documents . . . in connection with the transactions contemplated herein contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statements or facts contained herein misleading."

Buyer claims sellers' representations and disclosures were "fraudulent and deceptive" in light of a conversation with the sign tenant that took place before the 1998 lease was negotiated and entered into. The sign tenant provided deposition testimony that he "didn't know for sure whether this sign could be operated. I didn't know what position the City would take." He "didn't do anything overt . . . just waited to see if the City would make a move against the sign." He explained, "Did I anticipate [the City] coming? No. Did I think they were going to do anything about it? No. Did I feel that we had a very good argument for a legal sign? Yes. But you don't know." When the

4

sign tenant was asked if he informed sellers of the above, the sign tenant testified: "I think that I relayed the facts as I understood them to Abol [respondent Abol Hosseinioum] right down the line, 100 percent straight arrow. Everything that I thought; whatever I thought; what was going through my mind; how this was all crafted: all of it was discussed openly and freely."

Based on sellers' alleged misrepresentations and nondisclosures, buyer claimed to have "out-of-pocket" damages, including loss of the billboard, valued at $757,000.

Prior to trial, sellers moved for and were granted summary adjudication against buyer on the negligent misrepresentation claim. The action proceeded to jury trial on October 18, 2011, on buyer's claims that sellers had intentionally concealed material information regarding the billboard (fraudulent concealment) and/or negligently failed to disclose information regarding the billboard's legal status (negligence). After hearing the evidence and the arguments of counsel, on November 3, 2011, the jury found in favor of sellers and against buyer. As already noted, the jury's determination is not challenged in this appeal.

Thereafter, on November 28, 2011, a hearing was held to address buyer's remaining cause of action for a violation of section 17200. On March 23, 2012, the court issued its statement of decision determining that buyer was not entitled to any relief under section 17200. The second amended judgment, resolving all of the causes of action in sellers' favor, was filed on May 16, 2012. This appeal followed.

## III.

## DISCUSSION

### A.     *Negligent Misrepresentation*

Before trial, the trial court granted sellers' request for summary adjudication of the cause of action for negligent misrepresentation. Buyer claims this ruling was in error.

The same rules that apply to summary judgment apply to summary adjudication. (See *Lomes v. Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127, 131.) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law."

5

(*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar, supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850.) Where summary judgment has been granted, "[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; see also *Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1256.)

While intentional fraud requires the intent to deceive (Civ. Code, § 1709), negligent misrepresentation encompasses "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" (Civ. Code, § 1710, subd. 2), or "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true" (Civ. Code, § 1572, subd. (2)).

The elements of a cause of action for negligent misrepresentation are as follows: (1) a representation of a past or existing material fact or other matter; (2) the representation was untrue; (3) regardless of his or her actual belief, the person making the representation did not have any reasonable ground for believing the representation to be true; (4) the representation was made with an intent to induce the injured party to rely on it; (5) the injured party was unaware of the falsity of the representation, acted in justifiable reliance on the truth of the representation, and was justified in relying upon the representation; and (6) as a result of justifiable reliance, the injured party was damaged. (1 Miller & Starr, Cal. Real Estate (3d ed. 2011, Supp. 2003) Contracts, § 1:126, pp. 441-452, and cases cited therein.)

6

As explained by a leading treatise: In order to state a cause of action for negligent misrepresentation, "[t]he requirement of intent is satisfied when it is established either that the defendant had actual knowledge of the falsity of the statements or that he or she lacked an honest belief in their truth, or that he or she made the statements carelessly and recklessly in a manner not warranted by the information available. Because it is often difficult to prove the actual knowledge of a person who makes a misrepresentation, the tort of negligent misrepresentation is a convenient alternative [to fraudulent concealment] because it usually is easier to prove that the perpetrator lacked sufficient information to make the representation, whether or not he or she actually believed the statement was true." (1 Miller & Starr, Cal. Real Estate, *supra*, Com. at p. 445.)

In granting summary adjudication, the trial court found the undisputed facts failed to demonstrate a triable issue of fact with respect to the first element of a cause of action for negligent misrepresentation because no affirmative statement had been made by sellers regarding the legal status of the billboard. Specifically, the court pointed out that buyer had failed to identify a misrepresentation made by sellers constituting a "positive assertion' or 'assertion of fact.' " Buyer claims this ruling was in error, pointing out that sellers had made a representation in the PSA that they were not aware of any untrue statements or omissions in any of the transaction documents nor were they aware of any facts concerning the property "which could detrimentally affect the use or operation of the Property for its intended purpose . . . ." Buyer argues that the information conveyed to sellers by the sign tenant, concerning the billboard's questionable legal status, made these statements false assertions of fact. Buyer states: "By representing they had 'no knowledge' regarding the referenced subject matter, [sellers] positively asserted a fact."

Contrary to buyer's argument, under California law, "best of knowledge and belief" disclosure statements like those contained in the PSA here, simply do not constitute positive assertions of fact which can support a negligent misrepresentation claim. This tenet is aptly illustrated by *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298 (*Wilson*), a case remarkably similar to the case before us. In *Wilson*, Division Two of the First District Court of Appeal upheld a grant of a nonsuit on

7

a negligent misrepresentation cause of action in a real estate case because the alleged negligent misrepresentation was not a positive assertion of fact. The court explained: "Negligent misrepresentation is a species of fraud or deceit specifically requiring a 'positive assertion' [citation] or 'assertion' [citation] of fact. [Citations.] An 'implied' assertion or representation is not enough. [Citations]" (*Id*. at p. 306.)

Applying these principles, the *Wilson* court held that the sellers' representation in a disclosure statement that they were "not 'aware' of significant 'defects/malfunctions' " in the home's foundation could not support a negligent misrepresentation claim because a positive assertion of fact was required. (*Wilson*, *supra*, 15 Cal.App.4th at p. 306.) This was true even though there was evidence the sellers' real estate agent had a brief conversation with the sellers' next door neighbor, who suggested that the property might have foundation problems. (*Id*. at p. 303.) The court observed: "[A]sserting that one is not 'aware' of significant 'defects/malfunctions' in a foundation, while a direct reference to a foundation, is still only *implied* as to its true condition. Indeed, one who claims to be 'aware' of no defects necessarily leaves open the chance that unknown defects do exist." (*Id*. at p. 306.) Thus, the lack of a positive assertion defeated the buyer's claim of negligent misrepresentation. (*Id*. at pp. 306-307; accord, *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 984 (*Shamsian*).)

The principle that a negligent misrepresentation claim requires a positive assertion of fact and that an implied assertion is insufficient is well-settled in California law. Many cases quote a 1977 decision that " 'No case has been cited and we find none in which any court held that the doctrine of negligent misrepresentation applies to implied representations. In all cases a "positive assertion" was involved . . . .' " (*Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 298-299, quoting *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 304; see also *Weissich v. County of Marin* (1990) 224 Cal.App.3d 1069, 1083 [affirming dismissal of a negligent misrepresentation claim because it alleged an implied, not positive assertion].)

This same principle also bars a claim for negligent misrepresentation based on a failure to disclose or the making of a half-truth, which is the failure to disclose full

8

information.  In a particularly instructive case, the court in *Byrum v. Brand* (1990) 219 Cal.App.3d 926 (*Byrum*), affirmed a trial court's refusal to give a jury instruction that the failure to disclose material facts constituted a negligent misrepresentation.  (*Id.* at pp. 941-942.)  Significantly, CACI No. 1903, the standard negligent misrepresentation instruction, provides, in pertinent part, that the defendant "represented to [plaintiff] that an important fact was true."  Nothing in CACI No. 1903 allows for negligent misrepresentation liability for a concealment, failure to disclose, or half-truth.  (Compare CACI No. 1901 [instructions on concealment provide for liability based on failure to disclose and half-truths]; see *Shamsian*, *supra*, 107 Cal.App.4th at p. 984.)

In light of this overwhelming authority, buyer's failure to present any evidence of a positive assertion from sellers concerning the existence of permits for the billboard or an express assurance that the billboard was in full compliance with all applicable legal requirements bars buyer's claim for negligent misrepresentation.  (See *Byrum*, *supra*, 219 Cal.App.3d at p. 941 [by statute, a negligent misrepresentation claim requires "positive assertions"; the court "see[s] no reason to depart from these statutory requirements that something more than an omission is required to give rise to recovery on that theory, even as against a fiduciary"]; see also *Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 840-841, fn. 2 ["The record shows that the only representations made to plaintiffs regarding Murphy were *implied* representations that Murphy was fit to be a minister . . . .  The tort of negligent misrepresentation requires a 'positive assertion' and does not apply to implied misrepresentations"].)

The cases cited by buyer do not hold to the contrary.  (See, e.g., *Mary Pickford Co. v. Bayly Bros., Inc* (1939) 12 Cal.2d 501; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145; *Tijsseling v. General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623.)  Consequently, we agree with the trial court that there is no statement made by sellers which could be construed as a positive assertion of a past or existing material fact; thus, buyer could not establish the first essential element necessary to submit a claim for negligent misrepresentation to the trier of fact.

Because we affirm the trial court's grant of summary adjudication as being fully supported by the law of negligent misrepresentation, we do not consider sellers' alternative argument that "even had this claim gone to trial with the concealment and non-disclosure causes of action, the jury would clearly have found in favor of [sellers] anyway based on the jury's determination that all information material to the Rooftop Billboard had been properly disclosed."

## B. *The UCL*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) It authorizes courts to enjoin unfair competition and order restitution of money or property obtained by means of unfair competition. (§ 17203.) Individuals may institute actions for such relief on behalf of themselves or the general public. (§ 17204.) Virtually any law may serve as the predicate for an enforcement action. (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969.)

Sellers argued below that their one-time sale of the building did not qualify as a "business act or practice" for the purpose of establishing liability under section 17200. They insisted "[s]ection 17200 does not apply to a singular purchase of a commercial building by sophisticated real estate investors. . . . [¶] [T]he evidence at trial established that [sellers] were not engaged in the 'business' of selling commercial buildings in 1999, and did not have a 'practice' of doing so. To the contrary, the sale of 290 Division Street was a single transaction involving a single property. [Buyer] has not cited to a single case where Section 17200 was successfully applied to an isolated sale of commercial property."

Buyer's section 17200 claim was tried to the trial court. (*Hodge v. Sup. Ct.* (2006) 145 Cal.App.4th 278, 284-285 [no right to a jury trial of section 17200 action as its remedies, injunctive relief and/or restitution, are equitable].) The court found this argument was persuasive, concluding the evidence failed to show "the sale of 290 Division was a business act committed pursuant to a business activity." The court explained, there is "no indication that [sellers] had a business, or made a livelihood, from

10

selling buildings." Based on this reasoning, the court found that sellers' conduct with respect to selling its commercial property fell outside of the purview of section 17200.

We believe the trial court was on firm footing in holding that this isolated private sale of commercial property, by one not in the business of doing so, is not encompassed within the definition of "business act or practice" as that term is used in section 17200. The overriding purpose of the UCL is to protect the general public against unscrupulous business practices. (*Boschma v. Home Loan Center, Inc*. (2011) 198 Cal.App.4th 230, 252-253.) As stated by our Supreme Court, the UCL prohibits " 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)

In this case, the alleged unfair business act or practice took place within the context of two sophisticated parties entering into a multi-million dollar commercial real estate transaction in which they each received professional advice. Factually, this situation is far from the type of circumstance the statute was designed to protect against. Furthermore, the fact that a single transaction might provide the basis for a violation of the UCL does not really help buyer in stating a claim because it does not address the pivotal question of whether the UCL applies to a transaction by a person not in the business of making such transactions. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc*. (1998) 17 Cal.4th 553, 570 [single act will support a section 17200 claim].)

In any event, the trial court's ruling that sellers did not violate section 17200 was undoubtedly correct based on another more fundamental reason, even though it was not relied upon by the court below. (See, e.g., *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 ["If right upon any theory of the law applicable to the case, [the trial court's ruling] must be sustained regardless of the considerations which may have moved the trial court to its conclusion."].) Section 17200 defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." At trial and again on appeal, buyer describes sellers' predicate "unlawful, unfair or fraudulent" business practices under section 17200 as "pumping up the value of the purchase price for a

11

commercial property by emphasizing the stabilized long-term rents arising from a rooftop advertising billboard that was illegal under local laws." (Fn. omitted.)

The California Supreme Court has explained that "[b]y proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [Citation.]" (*Cel-Tech*, *supra,* 20 Cal.4th at p. 180.) A claim made under section 17200 is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1007-1008.) Under the broadest possible definition, a business practice is considered unfair if it is forbidden by any law or if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. (*Gregory v. Albertson's, Inc*. (2002) 104 Cal.App.4th 845, 854.)

Applying this test to the acts claimed to be "unlawful, unfair or fraudulent" by buyer is an easy task. (§ 17200.) First, by the jury's verdict and our decision today, no unfair or fraudulent business practices were found. Moreover, there was no showing here that any members of the public were likely to be deceived by any business practice of sellers, and no showing of a business practice forbidden by law. As no evidence exists to support buyer's claim that sellers were engaged in unfair, unlawful, or fraudulent business practices, it cannot state a claim under section 17200.

## IV.

## DISPOSITION

The judgment is affirmed.  Costs on appeal to sellers.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
HUMES, J.